Our next case for argument is 24-1398, Vascular Solutions v. Medtronic. Mr. Jay, please proceed. Morning, Your Honors. May I please decord? William Jay for the appellants. Each of these patents claims a ordered combination of elements. They claim them in different ways. Some of them designate the device as having two segments or three or four. Where the district court went wrong is its insistence that one of those segments, the term substantially rigid segment, has to have the same endpoint no matter which combination we're looking at. If the court had looked at it claim by claim, combination by combination, and given effect to each element... Especially when, if we define it appropriately, it's defined as a functional claim limitation in that it has to be rigid enough so that the guidewire can move through. Is that right? That's correct. Okay. So rigid enough so the guidewire can move through, it seems like that degree of rigidity could be different based on biology, based on a particular set of circumstances. I mean, it seems like, unless I'm mistaken, that the amount of rigidity necessary could differ. That's correct. That each time you assess whether a particular infringing device or accused device has the substantially rigid portion, you'd be asking whether that portion is substantially rigid enough to advance the device through the aorta. My confusion about this case is initially when I saw indefiniteness, substantially rigid, I thought, oh, it's about substantially in an indefinite term, or it's about rigid and how rigid is rigid, or it's portion. Am I correct? It's not about that. It's kind of about the boundary. It's not about that at all. You're right, Your Honor. It's about the boundary. Our construction is that substantially rigid means the same thing. It's a functional construction, as the Chief Judge just said. Portion means a longitudinal segment across these patents. But that the district court demanded something else. The district court demanded that the term substantially rigid portion also include a concept of a boundary, and that that boundary must be the same whether we're looking at a two or a three or a four combination. So on that point, I mean, the district court really did a heavy lift here, and he really worked hard, and he really was trying really hard to get it right. But somehow at the outset, he became convinced that our law requires that terms be construed the same if they appear in different claims. NTP kind of says that, right? So where is our law? I know we have Omega first and then NTP. What's the law on that legal principle? Let me give you a two-step response. There is a presumption that terms of art certainly carry the same meaning, and that within a particular patent, there may be a presumption that terms carry the same meaning. Our construction is the same across these patents in the sense that substantially rigid means substantially rigid. It means the functional construction that the district court gave it in the QX medical case, and that the Medtronic expert in the IPRs applied in pursuing the invalidation of a bunch of these claims. So just to be clear, I just want to restate it, so I make sure I got it right, that your claim construction is actually the same throughout the entire patent. This isn't a case where substantially rigid, you're suggesting it means one thing in one instance and a different thing in another instance. It always means this functional definition. That's exactly right. Now, the exercise the jury might go through in, you know, it might look a little bit different because in some patents, the substantially rigid portion must also have additional characteristics. It must be proximal of other segments. It must have a degree of rigidity. It must have a rail, but no lumen. There are any number of characteristics that some of these claims include and others do not. And those various characteristics could impact how rigid it has to be to meet the definition of being capable of advancing within the guide catheter. Yes, and additionally, some of the claims ask the fact finder to determine whether the substantially rigid portion is more rigid than one of the other portions that's proximal of the device. Can I ask you a housekeeping question, which is the district court was dealing with 10 claims, but there are 40 claims that are being asserted. What's the status of this whole case? So there is a final judgment because the district court asked the parties to limit the initial proceedings to 10 claims. So he did Markman on 10 claims, but he concluded that because the term that he thought was indefinite appears not just in those 10 claims, but in all 40 claims in suit, the district court invalidated all 40 claims in suit, which are enumerated in the judgment. That's why there is a final judgment in this case. But where we were before that decision was that the 10 claims had been selected to go through Markman. We had not gotten to summary judgment, much less narrowing the case for trial. And the other side makes an argument, I don't know what term to use anymore, waiver, forfeiture, whatever, that you all gave up on the group two claims, or that you made some concessions because of the district court. Can you respond to that briefly? Of course, Your Honor. So this all refers to the transcript of the hearing after the Yonkou construction had been proposed. At that hearing, I think you'll see, and this is at page 22737 of the appendix, the district court came out and basically before anybody said anything, he said that he agreed with Mr. Yonkou that Teleflex's original proposed construction isn't viable. So far as I'm concerned, that construction as well as Medtronic's are both off the board, and I don't want to rehash our argument. So in other words, at that hearing, it was clear that we were not to continue arguing the construction that we're arguing today. You said that's at 22737? That's correct, Your Honor. We don't have that. You didn't give us that in the appendix. I hope I haven't gotten the page wrong, but it should be in the appendix, whatever it is. It goes from 22728 to 22830. I do have 22737 in my appendix, Your Honor. Yeah, but you said what? 227 what? Three seven. Yeah, we don't have that. None of us have it. That's very surprising. I apologize for that, Your Honor. Somebody's going to get yelled at when you leave here. We have had some issues with the preparation of the paper copies. The relevant language, I think, is quoted in the reply brief as well, and I've read you the salient portions of it. So far as I'm concerned, those are both off the board, and all of those premises I agree with, and I don't want to revisit today, because this is all stuff we've already been through. So before the quote that the other side comes to six or seven times in its red brief, the district court had already told us that our construction was, quote, off the board. And so as a fallback... So you didn't waive it. You're saying we didn't waive it. It was fruitless or pointless to continue to try to advocate it in light of him saying move on. Right, right. We had advanced the construction. We had had it rejected. So you moved on. So we moved on, and we made essentially a backup argument, which we are not advancing on appeal, because we're advancing our primary argument on appeal. Hypothetically, if we were to agree with you on the indefiniteness question with respect to the claims before us, what do we do? We don't have to do claim construction up here, do we? I agree with that, Your Honor, and there are 10 claims, and we wouldn't ask you to walk through all 10 of them, much less the 40. I think that if the court were to correct the district court's foundational error and say, one, it has to be done claim by claim, and each of these claims is a different ordered combination, and two, the premise is wrong that the term substantially rigid segment has to have this consistent boundary that can't look any different, even whether it's a combination of two, three, or four. If you corrected those foundational errors, maybe did the analysis as we've suggested with one of the exemplary claims in the 776 or 032 patents, I think that would be adequate to set the district court straight and allow us to move this litigation forward. If we reverse remanded and wanted to do a construction, what would that construction be today for you? If you were to construe the claims, I think that first we'd urge you to look at each claim individually. If we started with the 776 patent, which is in the inside cover of our brief, the exemplary claim, we would say that because that one, a substantially rigid portion, doesn't have any extra bells and whistles around it. It is one of three segments. It is proximal of the two other segments, and it is substantially rigid. It's a longitudinal portion that is substantially rigid, meaning rigid enough to push to advance the device through the catheter. Mr. Jay, can you look at 27399? I think this also contains the hearing transcript that you're referring to. I just want to double check, because we don't have the other page you're referring to. Maybe you got the number wrong, or maybe... 27399? Okay. My clerk found it. And then 27765 is where they made the concession in light of the prior events. But 27399, I think, is where the judge says, no more on this. Am I right? Is that the portion you're talking about? It's not. It's not? He says it there, too. Oh, my God. The page that you just cited is before we went to Mr. Iancu. Oh, I see. In which the district court said, I don't want any more briefing on that issue. I don't want any more defense of your original construction. And then my co-counsel has pointed out that I think I read the page number to you wrong. 27737? If I read that wrong, I apologize. But it's page 5 of the transcript of the claim construction hearing on July 7, 2023. That's where the court says he doesn't want to revisit it today. But you're right, Your Honor, that he says it in both places, both before and after we went to the proceedings before Mr. Iancu. Got it. I see it there. That is a good job by co-counsel. That's what you're supposed to do. You're supposed to give him, especially when he messes up. I'm very grateful for that because I should be able to read five numbers without messing them up. So I think I finished my answer to Judge Mazant's question about applying the functional construction. I think that as the court went through the claims, each of these claims is a different combination. And so I don't think that there's a construction issue. But the court would certainly have to instruct the jury about the aspects of the substantially rigid portion in each of these combinations. Can I reserve the rest of your time for rebuttal? Yes, please, Your Honor. Ms. Ahmadi. May I proceed, Your Honor? May it please the court, my name is Brittany Ahmadi and I represent Medtronic. The fundamental issue here is that there's no principal basis for a skilled artisan to identify the substantially rigid portion and thus no way to objectively determine whether a device falls within the scope of the claims or outside the scope of the claims. So it's not simply an issue of is there a set end point in every single claim. It's how does a skilled artisan, looking at the claims with the claims in hand and a device in hand, determine that this is the substantially rigid portion and then assess whether it meets the other limitations of the claims. This is clearly shown by Teleflex's expert's own analysis at Appendix 19854 where Mr. Keith opined that the same device could have a substantially rigid portion that includes the site opening as in Mr. Keith's version 1 mapping. I'm sorry, what's the page site on the appendix? I apologize, Your Honor. It's Appendix 19854 and it's also reproduced in our red brief at page 23. Mr. Keith opined that the same exact device could have a substantially rigid portion that includes the site opening if you use Mr. Keith's version 1 mapping or excludes the site opening if you used his version 1A mapping. But the issue here is that there's no principal basis for a skilled artisan to determine which method to use to determine what is the substantially rigid portion and then to assess whether it falls within the scope of a given claim. And I think with respect to Teleflex... You need to slow down. I don't understand the 1A argument. And I guess part of it for me is it just means this has a substantially rigid portion whether you measure it one way or whether you measure it another way. Either of those ways of measuring this results, though, in an infringing device. So that's what I'm not understanding. I'm obviously missing your argument somehow because it doesn't make sense to me. So try again. So I think this goes to why Teleflex's proposed construction does not work here. And Chief Judge Moore, you had mentioned that is it an issue of the degree of rigidity and that's going to vary by device, et cetera, or anatomy, et cetera. That is inconsistent with the position that Teleflex has taken throughout the litigation. And Teleflex has agreed that any portion of the device could be a substantially rigid portion throughout the litigation regardless of the degree of rigidity so long as it's rigid enough to push through the guide extension catheter. But that's right. It's a functional claim limitation, basically. It has to be rigid enough so the guide catheter could get through. And that means I'm confused. Your Honor, respectfully, that's inconsistent with the positions that Teleflex has taken where it's taken the position that essentially the patentee or an accused infringer could pick any portion of the device and call it the substantially rigid portion despite the fact that all of the claims make clear that there are different portions of the device. For example, if you take a look at the 032 patent claims 3 and claims 9, that's a perfect example. You have the claim 3 of the 032 patent depends from claim 1, which recites the substantially rigid portion. Claim 3 requires that the substantially rigid portion be in the tubular section, while claim 9, which also depends from claim 1, requires that the substantially rigid portion be in the substantially rigid portion. So you have two claims, claim 3, depending from the same independent claim, requiring that the side opening be outside the substantially rigid portion. And then claim 9, depending from the same independent claim, requiring that the side opening be in the substantially rigid portion. And so there's no way to determine. Those are mutually exclusive claims. No way to determine whether or not a given device, if you are a device holder and you are offering a device for sale and you have that device in hand to determine whether you're within the scope of claim 3 of the 032 patent with the side opening outside the substantially rigid portion or within the scope of claim 9 of the 032 patent with the side opening within the substantially rigid portion. There's no principal basis, and that's why these claims are indefinite here. But isn't that a problem with the trial judge making that decision early on that they were mutually exclusive? That tends to be a problem here. I think if you look at the claims, and claim 3 and claim 9 are perfect examples here. Those claims are mutually exclusive because the independent claim recites specific portions of the device, including the tubular portion and the substantially rigid portion, which are separately recited in independent claim 1 of the 032 patent. And then you have a dependent claim that specifically states that the side opening is in the tubular portion for claim 3 and for claim 9 that the side opening is in the substantially rigid portion. I do not understand this argument. Dependent claims, by their very nature, can be exact opposites, right? You have an independent claim that's broad enough to cover many different ways of doing something. Then you have a dependent claim that covers one way of doing it, and a different dependent claim that covers an entirely different way of doing it. That's claiming. That's normal. I don't see how that supports your definiteness argument at all. And here, what you're referring to with the level of precision of each claim, in this instance it includes the opening, in this instance it doesn't, it seems to me that each claim on its base tells you all the things that are necessary to understand what's included. I don't understand this argument. So I think it is true that you can have claims that claim different subject matter and different scope. And we agree that claim 3 and claim 9 are two such claims. The issue here is that under telephox interpretation, you can identify any portion of the device as the substantially rigid portion. No, only the portion that allows the rigid, that creates the rigid environment for the guide catheter to go through. So whatever portion of the device does that, and you know what? Might be two portions of the device acting together that do it. Might be three portions. Might include the opening, might not include the opening. That's right. If this device has a portion of it or combinations of portions that fit together that effectuate that function, it then has a substantially rigid portion. What's the problem? The issue is that there are claims that require the side opening to be outside of the substantially rigid portion. And so if you have a claim and it requires a side opening to be outside the substantially rigid portion, if you can just pick and choose and arbitrarily draw lines, which is essentially what telephox's expert, Mr. Keith, does, arbitrarily draw the line anywhere along the device, regardless of any specific feature or functionality of that device, any portion of the device, you can essentially just pick and choose infringement or non-infringement by selecting the device. You only have infringement if a portion of your device is substantially rigid such that the guide gets through. I mean, then you have infringement. And by the way, Claim 1 says a substantially rigid portion. So it's clear that it's not talking about, you know, a specific substantially rigid portion. Like it has to be narrowly subscribed. So I think the claims are they recite more than just the substantially rigid portion. They recite other aspects of the device. And if you take a look at the summary of the invention. Those aspects of the device would have to be contributing to the substantially rigid portion in order for there to be infringement. So the other aspects of the device, if you take a look at the claims, are recited separately from the substantially rigid portion. So in essence, the interpretation here where you can pick any portion of the device as a substantially rigid portion makes the other portions of the other claimed portions of the device completely redundant because an applicant or a patent holder could just pick any portion of the device and say, this is the substantially rigid portion, even though it is the tubular section, for example. I guess I'm a little confused. I'm not steeped in this, and we're just at the preliminary level. But it seems to me you're arguing against an infringement argument that Telefax has or may make. And maybe that's a bad argument. But I'm not sure how what they could conceivably say with respect to infringement decides this indefiniteness problem we have. It's not about the infringement issue. I think it just shows that even their own expert agrees that there's not a principled way to understand the scope of these claims. And so I think with respect to indefiniteness, if you have two claims that have two different requirements that are mutually exclusive, as in Claim 3 and Claim 9, the fact that you can't determine what is the substantially rigid portion to assess whether or not it falls in Claim 3, meaning that the side opening is outside of the substantially rigid portion, or whether it falls within Claim 9, meaning the side opening is within the substantially rigid portion, renders these claims indefinite. And I think this case is similar to the Sasso golf case, which was cited in our papers, where there was a recitation of a foot and a toe, but there was multiple methods that you could use to determine the scope of the claim limitations, one resulting in infringement and one not resulting in infringement. But a skilled artisan wouldn't have a way to determine which of those methods to choose. And that's the same way here, where you have Mr. Keith's Version 1 mapping, and this is in our reply brief on page 23, and Mr. Keith's Version 1A mapping in our reply brief as well, where there's two different methods that you could use to map the claim limitations, and you don't have a principal basis to determine which of those methods to apply. We have a case other than Sasso golf, which happens to be a non-presidential opinion. We also cited in our papers the Honeywell decision, where this court reached a similar conclusion, where if you have two different methods for determining either whether a device falls within the scope of this case or outside the scope of the case, and there's no principal basis to select one method over the other, then the claims are indefinite. And that is the situation we have here. There's no principal basis for a skilled artisan to determine, first, what is the substantially rigid portion in these claims as distinguishable from the other recited portions, and then to look to determine whether or not, in a given device, that device meets the other characteristics of the claim. Essentially, what Teleflex wants to do is to go backwards and say, you want this to be a case where there's three different ways to measure something, and the spec didn't tell you which one to use, and those three ways would result in differing application on infringement. But that's not at all this case. This case is in some claims, they say this component has to be within the substantially rigid portion. In other claims, they say this doesn't. That doesn't mean there's different ways to measure it. It means for different claims, there's different ways to measure it. So the Teva analogy, so I can explain to you why you're wrong, would be that if claim one said measure it according to this methodology, and then claim two would be measured according to this methodology. Here, in one claim, the opening is included and has to be included, and so your people can look and say, we infringe if the substantially rigid portion includes the opening, and that contributes to the substantial rigidity that's necessary. And then they can look that we infringe that claim, but we don't infringe the other claim. Because in the other claim, the opening can't be part of it. That's the difference here. And that's precisely the issue here, because Teleflex is taking the position that both of those claims are infringed by the very same device. So the very same device, it is their position, would infringe both a claim that requires the side opening to be in the substantially rigid portion, and a claim that requires the side opening to be outside. But that's a question of infringement. That's not a question. That's what I thought you were getting at, and I think that's premature. I don't have a basis for it. I mean, maybe they have a bad infringement claim, and you can say that, and it can't be infringing under those circumstances. But I'm having a hard time tying that to the indefiniteness of these claims because of that. I think with respect to if you look at their proposed construction, where they have proposed essentially a split construction of substantially rigid and then separately portioned, when there's no basis for their construction of the portion piece, it's not supported by anything in the specification. But even for the substantial rigidity piece, they have taken the position that, and this is in Appendix 27128, as well as recognized by Mr. Iancu and the district court in their decisions at Appendix 27306 to 27307, that essentially any portion of the guide extension catheter would meet the substantially rigid portion limitation, despite the fact that there are claims that require the side opening to be outside the substantially rigid portion. And that is the fundamental issue with their claims, that a skilled artisan with a device in hand and the claims and looking at the claims could not tell whether or not their device falls within the scope of the claims or outside. And I think it's improper. What they essentially want to do here is go backwards and say, here are the claims that I'm reciting. How can I line draw, arbitrarily line draw, to get this device to fall within the scope of any given claim, setting aside that those claims are mutually exclusive? And that's the same type of situation that we have in the measurement cases, not dealing with a precise measurement, but the issue is, how do you identify that component that's recited in the claims along with other components recited in the claims to then assess, does that component meet the requirements of the claim? Does it have a side opening if the claim requires that? Does it not have a side opening if the claim requires that? Does it meet the other limitations that are required of the substantially rigid portion? The fundamental issue here is there's no way to determine where does the substantially rigid portion end before you get to, for example, the tubular portion or the flexible tip portion, which are separately recited in the claims. And if you can't make that determination at the outset, then you can't assess whether or not a given device falls within the scope of any given claim. And that's the fundamental issue here. And if I could just say one word, I realize that I'm over my time with respect to their proposed construction. There's no basis in these claims to construe the terms separately, as Telfax proposes. That was rejected by both the court-appointed expert as well as the And the reference to substantially rigid portion is only in connection with the entirety of that term. Okay, thank you, Ms. Samadi. Mr. J., you have some rebuttal time. Thank you. Thank you, Your Honor. I'd just like to respond to two main points. First is the pick any portion argument, the notion that our construction allows the patent owner to pick any portion and designate it the substantially rigid portion. That's just not correct. What about the exact question that she raised? Are you asserting both Claim 3 and Claim 9 against the same device, one of which you would be having to argue the opening is a part of the substantially rigid portion, and the other of which you have to be arguing the opening is not a substantially rigid portion. You understand. I do. We are not asserting Claim 3 in this case. You heard a lot about Claim 3 and Claim 9. We're not asserting Claim 3. We're not asserting Claim 1 either because it's been canceled by the CTAB, because Claim 1 didn't have an opening at all. This is my other point about Mr. Keith's markings of 1 and 1A on the diagram. If you look at pages 16, 220 to 23, and I've looked carefully to make sure I said those numbers correctly, that's the deposition at which he was asked to draw those on the diagram. He's being asked about Claim 1, which doesn't have an opening at all. He was asked, which part is the substantially rigid segment and which part is the tubular portion. It doesn't really matter exactly where you draw the boundary when those are the only two things. When you add an opening, the combination is different. In the 776 patent, there's an opening segment. It has to have certain characteristics, and the substantially rigid segment has to be proximal to that. At a minimum, in that context, you can see that if we tried to go into court and say to the jury that the substantially rigid portion is distal to the opening, it wouldn't infringe. Anything else? I believe that's it. Thank you, Your Honor. Excellent. Case is taken under submission. Thank both counsel for their argument.